Come here. Next case is Lexington Luminance v. Amazon.com et al., 2014-13-84, Mr. Katz. May it please the court, first I'd like to explain why the claim limitation that was found indefinite below actually is definite and why our construction is the only reasonable interpretation. The claim limitation reads, said substrate is selected from the group. Mr. Katz, haven't there been developments in this case that you or your client knew about for at least a month and haven't told us about, namely that the claimant issue here has been modified in a reexamination proceeding? Your Honor, the reexamination has been ongoing for over a year at this point. The Patent Office affirmed the patentability of Claim 1 back in July, based on... But the claim you're dealing with on appeal now is no longer, isn't that right? It's gone. The reexamination certificate came out, right? As of the issuance of the reexamination certificate, and that might be today, I haven't seen it on the Patent Office's website. I thought there was a notice as of October 31st, in other words, notice of intent to issue a reexamination certificate that your client knew about. Yes. Isn't there a duty to tell the court of that? We plan to tell the court when the reexamination certificate is issued, but in any case, we're talking about indefiniteness here, and it seems that the Supreme Court has... Before we get to indefiniteness, let's just assume for the moment that the claim that you want to talk about, in terms of its definiteness, doesn't exist anymore, because the reexam has now resulted in a different looking claim that has deleted the very limitations that were under dispute below at the district court level. What are we supposed to do with that? We still go back and we determine if the language of the 851 patent is definite or indefinite. I'm just asking you, why do you think it still matters? You now have a new claim. Because as a prophylactic matter, the claim was changed, that particular limitation that was found indefinite was changed. We'd be foolish to not change it given that objections were made. Someone else initiated the reexam proceeding. We showed the patent office that the claim was patentable in light of the prior art, and as a prophylactic matter, we changed it. But the claim you're asking us to reverse indefinite finding on doesn't exist anymore, or won't when the reexam certificate... I really fail to understand why we would even consider your argument. Because if you find that the construction, that our construction is correct, our construction is the same construction that this... It doesn't matter whether your construction of the replaced claim is correct, because it's non-existent. Yes, it will through intervening rights. The other side is going to claim that intervening rights apply, and that they're not going to be liable for past damages, and that they'll have intervening rights. That seems an issue that wasn't part of this appeal. Why would we address this now before the district court addresses that argument? Well, it's still an issue as to past infringement, right? Because the 851... I understand that, but isn't that an issue? That certainly wasn't argued, or briefed, or raised to us on appeal. Doesn't that have to go back to the district court to address that? Well, this court, I believe, needs to do two things. The first is to determine definiteness as to the limitation. And then provide construction for the term. The infringement that's been ongoing, I mean, we still have rights to claim infringement back to six years before the... Mr. Katz, I understand your point that it may still be relevant for reasons that haven't been raised properly, perhaps were not before the district court intervening rights. But I'm still troubled by your failure to in any way appreciate that you had a duty to inform the court which was preparing a particular case that there was a new issue that had arisen. Do you not accept that you had a duty? We do have a duty. To put that in context, we did discuss the re-exam in our statement of related cases. Yes, but there was a notice of an intent to re-issue the patent. There was an action. It was more than just an ongoing speculative possibility. That was not a watershed event for the re-exam. I would have thought your client was quite pleased and would have considered that a watershed event. Well, the client was pleased back in July when the patent office confirmed the patentability of Claim 1. Not much had changed since then. I understand and I certainly apologize that the court believes that we neglected our duty here to update, but I don't believe that the re-exam impacts the issues that the court needs to decide here today, which still needs to be the construction of the term and indefiniteness. The person having ordinary skill in the art should only be looking at the facts as they did on March 21st, 2003 when the patent was filed in order to determine indefiniteness. What you're saying is we should review the case before us? Absolutely. Aside from what's happened in the patent office? Yes, absolutely. Because we haven't asserted the re-exam. I don't even know if the re-exam certificate has issued. I believe if it has not, it will soon. But we still need to discuss the past infringement going back several years. No matter what happens in the patent office, no matter what happens with regard to the re-exam, this is still an issue for the 851 patent and it has nothing to do with the re-exam. Although we might be in a peculiar position, I guess you want us to resurrect your claim that was invalidated below. But that claim, there's really nothing to resurrect because it's going to be deleted when the re-exam certificate comes out. But I guess you're saying it's still necessary and it's still a live controversy because if we were to conclude that the claim is in fact definite or that it was wrong for the district court to dismiss the claim as indefinite, that still gives you a chance for intervening rights from the time you filed the complaint or six years before you filed the complaint. Is that your position? Well, there are two aspects here. One is past infringement without having anything to do with intervening rights. If the court determines that it's definite, then we go back to the district court and for instance, the case continues and we're going to claim damages from when Amazon started selling the accused devices until the 851 patent went away, which is when the re-exam certificate came out. So there's a number of years there that we believe that we are the royalties under the patent, no matter what happens. Well, why isn't the claim indefinite as the district court held because it has an open-ended sort of pseudo-MacRouche claim? Okay. So the limitation we're speaking of is said substrate is selected from the group comprising A, B, and C and I'm simply paraphrasing the six list elements here as A, B, and C. Before I give that to my skilled artisan for interpretation, I need to give him particular interpretive tools to use. The first is that the word comprising means including but not limited to in claim interpretation parlance. The second tool, I need to tell him that comprising is not a legal word with which to abrogate claim limitations, which this court has stated. Then I need to give him the patent prosecution history and the specification. He reads the specification, he'll see in the specification column three lines 53 and 54, 11 exemplary substrates there. He will know that some of those include combinations of list items. Which ones are combinations of the listed items in that spec? Those are identified in our opening brief on page 14 with the correlate meter. I guess GAN on Sapphire, I guess that would be an example. That's actually the first layer on the substrate. You're referring to column three lines 52 to 54? Gallium arsenide, indium, phosphorus, etc.? Yes, Your Honor. Some of those are combinations of list items. I've given him the interpretive tools, I've given him the specification, now I give him the prosecution history. From the prosecution history, he knows from the appendix at page 896, that the first layer and the substrate have to be two different materials. He knows right away to reject Amazon's intention that the substrate could be made from anything under the sun. From that, he's going to conclude that the substrate must include one or more items from the A, B, and C, but can include one or more other items. If he wants to practice outside of the claim, he can easily do so. All he has to do is to avoid using any of the list items for a substrate material. I'm a little lost because, of course, one of ordinary skill in the art has to understand this integrated document and what it teaches and informs him of the scope of the patent. At the same time, we are talking about claim drafting conventions here. Comprising, as you pointed out, is a very well-known convention in patent law. It's open, it's open-ended. There's a very strong intentionality there when you use comprising instead of consisting of. When I look at this kind of claim phraseology, it looks like a Marcouche claim, except you didn't use consisting of, you used comprising. Now you have to convince me to break away from the rut that I'm in that comprising means something very particular, which means all of these things, but it could be a bunch of other things, too. Let me address the Marcouche issue. First of all, it's an open claim. It doesn't use consisting of, as Your Honor mentioned. In addition, by using combinations of list items, this Court has held in Abbott Labs v. Baxter that Marcouche elements are to be used singly. Here, where they're using combination, it's another reason to know that these are not a Marcouche group. Well, I don't see anything in the actual claim language that suggests that it can be a combination of one or more of the listed groups. I agree with you that the claim that you, as amended in the reexamination, now makes that clear. The claim says, at least now or as of any moment, that substrate having at least one of a group consisting of group 3-5, group 4, group 2-6, etc. Okay, so that claim language is very clear. Why does your claim language say what you say it says? Well, it may appear to be less clear, but it's the only reasonable interpretation. Again, putting together the interpretive tools together with the information from the specification and the prosecution history, it's the only conclusion that a person having ordinary skill in the art can come to using the tools and properly applying them. Mr. Katz, you wanted to save some time. If you want to ask us to save it, and we'll hear from Mr. McKeown, is it? McKeown, thank you, Your Honor. McKeown. Good morning. May it please the Court. First, let me apologize for the late notice of a letter we submitted yesterday. We just found out yesterday about the intent to issue the reexamination certificate. So what should we do? Well, we think it impacts the reach of any decision that this Court makes. Obviously, when that issues, if it does today or Monday… Do you think it moots the appeal? I do, Your Honor. I think that the intellectual property right that's on review here, by operation of the certificate, is gone. On the other hand, if we were to say that the district court got it wrong on definiteness, then that means that that patent right, as it existed when it existed in front of the judge, was a live patent right. And then, therefore, then there could be an inquiry on intervening rights. Is that right? Well, I don't think so, Your Honor, because the intervening rights inquiry is going to be whether the certificate, the claim as issued in the certificate, is, I quote-unquote, identical to the claim in the now-gone patent. And that will be the inquiry. Whether this Court decides that it was indefinite or not, I don't think bears on that. But don't we have to decide the case before us now? I think, as of today, certainly there's a live appeal with a judgment before you that's on review. And, yes, we have to decide that. Well, let me ask you a question about the claim that we're talking about. Lots of claims have the word comprising. And we all know that comprising lets in other non-specified items. And so, but they're not necessarily indefinite because they use the word comprising. So why should this be indefinite? Just because it was sort of in the format of a MACUS group, which is a patent office examining practice. The Supreme Court just told us what indefiniteness is. Whether we can understand the claim with reasonable certainty. Well, can't we understand this with reasonable certainty? Here's the issue, Your Honor. The word comprising is actually used in this claim four times. The one under scrutiny here has a certain role. It's introducing the group because the key words are selected from the group. So when they used open-ended language here, they've created a problem. Because now I don't know what the group is. Well, the group is specified. Well, it's enumerated. There's certainly a list of enumerated elements and alloys. So we're getting there. But where does it end? There's no dispute on its appeal that including but not limited to is... Well, it's comprising in the first word, in the first sentence of the claim. Where does that end? Well, Your Honor... So comprising doesn't always create indefiniteness, does it? It doesn't, but because we're talking about selected from the group. Selected from the group, including but not limited to. A, B, C. But what about D? What about E? And in this particular case, for example, quartz, silicon dioxide. Maybe one theory of how to understand this phrase is the beginning of the phrase, selected from the group, dominates the word comprising. So now, selected from the group, we now know that we're confined to whatever listed items are going to be itemized in the claim. And so, therefore, the word comprising isn't, in this particular instance, conveying the understanding that we typically understand the word comprising because this particular usage of it has been dominated by the phrase, selected from the group. You know, you could look at it that way and take the view that there's an electricographer situation going on here. That certainly wasn't argued. I think, fundamentally, what you're doing there, Your Honor, is deleting the words, is selected from the group, from the claim, and changing that last and to an or. So we've got a substrate comprising A, B, or C. And if he did that, this issue wouldn't be here on the field because that's been held to be permissible. And the reason why the Marcouch format is important, and it's not a matter of semantics. But this isn't a Marcouch group. It's not. It's a failed one. Well, see, that seems to me problematic. I mean, the Marcouch group requires a very, very specific language. And when somebody uses it, they not only are meaning a very specific thing, they have very specific obligations. And unless they use additional language, it's not a combination. They didn't want to do that here. So it's clearly not a Marcouch group. And it seems like the district court's decision looking at this as a failed Marcouch group misses the point. The point is, under Nautilus, is this something that we can conclude with reasonable certainty identifies a claim? And I don't know the answer to that. But it seems the district court's analysis was incorrect. I don't view it that way, Your Honor. I mean, the Marcouch analysis, the reason why we talk about that is because it's a safe harbor. It's 90 years. It's true, tried, tested. Yeah, but they didn't use that. They didn't, but what they did do, though, is they took advantage of the system of claiming many different species in one claim. Remember, the Marcouch case originally said, we're not going to invalidate these claims because you claim a lot of species in a single claim. You don't need to file 100 patent claims or 100 patent applications. You can do it in one claim. The point of the Marcouch claim, correct me if I'm wrong, is the lack of a generic term. That's true, Your Honor, but the format— Judge Hughes says this isn't, strictly speaking, a Marcouch claim. It isn't, but it is trying to claim a lot of species in a single claim. What if instead of comprising it, it just used the word of? If it didn't use the word selected from the group, that's where the problem is because now you have a group that's undefined. It's open, and we don't know where to— It's open because of the word comprising. Correct. But if it said selected from the group of these five things— Oh, if you— That's what I mean. Well, I think—okay, sorry about that. Replace comprising with of. Comprising of. No. Substrate is selected from the group of whatever the rest of those things. Why isn't that— Well, you're getting closer because, you know, you're getting closer. Again, the question is whether the group's closed. Certainly, with the word comprising, there's no question— Well, I understand. I mean, we have conventions here, and comprising means open-ended, but we also have determined that it doesn't necessarily render it indefinite. Yes. I mean, of seems like it would be very hard to find it indefinite under a reasonable certainty test. Yeah. I think they're moving in the right direction if they can get that to be of. Of course, what they did in the patent office was went back to the conventional format. So, of would help them. I think getting rid of the word comprising combined with selected from the group really was causing the problem. I understand where you're coming at, I think, but it seems to me that particularly since it's different off on motions, right, that the way the district court analyzed this seemed wrong, that it could have been that because it used the word selected from the group comprising and comprising has this conventional meaning, that that would have been indefinite under the Nautilus standard because it was open-ended. But to say that they tried but failed to claim a Marcouche group when they clearly didn't use the language of Marcouche groups seems an error. I think the essence of the opinion below, though, Your Honor, frankly, is it doesn't comply with the statute. 112. Does it comply with 112? And if they did Marcouche, it's a safe harbor. We wouldn't be fighting about it. How do we know that? A person of ordinary skill wouldn't look at this and find with reasonable certainty that this is one of those instances where comprising isn't open-ended and it means these things or a combination of these things. Your Honor, we have a really robust intrinsic record here, and it's intrinsic record that should drive this analysis. We've got processing history. We've got 18 publications cited. Eight of them are discussed in the patent. Five patents are cited. So it's a robust processing history and intrinsic record, and as this court said recently in the interval licensing case, footnote six, it's the intrinsic record that we want to look at. Where is that analysis in the district court's opinion that it looked at the intrinsic record and determined that a person of ordinary skill wouldn't find this definite with reasonable certainty? It certainly was presented to the court as part of the process, Your Honor. But that's not the district court's analysis. The analysis isn't quite there. Of course, this court reviews judgments, not opinions, and I think certainly the court got it right, considering what was presented. But it seems like what you're saying is that even if we think the district court erred for its indefinite finding, we have another ground that we can find it indefinite on. Well, on the issue of claiming this unbounded claim with the alternative species, yes, absolutely. It fails under knowledge, fails under interval licensing. The claim does not, you don't know when it stops. That's a fundamental error. That takes us to figures 2B and 4B. Yes. 2B is sort of like the Hamlet figure. Yes. In any event, the specification makes pretty clear that these are part of the invention and should be part of the claims. And why shouldn't the claims be construed definitely to include 2B and 4B? One of the limitations, there's no dispute on this appeal, but there's two negative limitations in the claim when it talks about the text or district. No sharp corners. They agree with that finding from the district court. And no constant angle. No linear portion. Those two negative limitations were added during the prosecution. And as part of that, what they did was they took out 2B because it's got sharp corners and it's got linear portion. But doesn't 2A have... I would say 2A has got sharp corners and that's out. But figure 1, of course, is in. And that's the invention they ended up with when they left the patent on. Claim figure 1. And the two negative limitations, no dispute on this appeal, that's in the claim and they exist. They just amended the claim in the patent office and A and 2B are out. And that's happened, of course, in the Rolls-Royce case and other cases of this court. If you do that, you can get all your money. So not only 2B is out, but 2A is out too. You've got a sharp corner there, Your Honor. And that's something that they added during the prosecution. So you're saying the claim is definite and includes only figure 1. Well, Your Honor, of course, we've got the indefinite argument that the court based the judgment on and then, as Your Honor knows, we have the extended lattice defect problem. It's another term, another ground to affirm the district court. Indefiniteness is a question of law, though, right? It is, Your Honor. The extended lattice defect is a big problem for them. There's no antecedent basis for that term, the extended lattice defect. When we use the word the, it's a definite article. So we're talking about the extended lattice defects. We're talking about a particular set of extended lattice defects. So the question then is, OK, when do I know, when I'm trying to design around this patent, when do I know I've guided enough extended lattice defects to infringe this claim? Use the word the extended lattice defects. Is it two? Is it all of them? Is it half of them? You don't know from that language. You're saying the claim should go because of the word the. Your Honor, I don't want to make a gotcha argument. That's not what we're saying. You've got to look at the entire record here. There's 32 recitations in the specification of the extended lattice defects or the threading dislocations and the like, but not one of them tells you quantitatively how many we're talking about. So in the claim, it's an important feature of the claim, the extended lattice defects and guiding them away. When the claim says that, how do I know I've got there? Is two enough? Is 50 enough? Is all of them a requirement of the claim? So what you're doing there is you're picking out of a hat. And of course, not all of this tells you that. You have competing instructions. Any one that could work, but there's none that are objective on their face that the right answer is indefinite. What was the prosecution history page for getting rid of sharp corners? Your Honor, the A224 is when they added the smooth rotation of microfascist limitation. And A233 and A236, the examiner amendment, they added without a prescribed angle of inclination. So the two negative limitations were added during the prosecution in those sites. I'm sorry. Where did they say in the remark that this claim limitation means it's... Your Honor, during the prosecution, they added those limitations. And during the district court and on appeal, Lexington does not dispute that when it says smooth rotation of microfascists, they don't dispute that means no sharp corners. The construction they're proposing to the court here includes the requirement that there be no sharp corners. And that's in conjunction with that language that was added during the prosecution at those sites. What were... The smooth... The smooth rotation. ...etching profile with a smooth rotation of microfascists. That's correct, Your Honor. That was what was added. And there's no disagreement here. The district court held and they don't disagree with this facet of the claim construction yet. The smooth rotation of microfascists, that could be just talking about wherever the sloped etching profile is. I guess that's the question. Yes, so the dispute, frankly, that kind of runs through these arguments is we say sloped etching profile, you can't pick a portion of the trench, a corner of the trench. It's the whole trench.  is a word that doesn't exist anywhere in the truth. I guess that's kind of a question of what does the word trench mean, right? When it comes to semiconductor processing. That's fair, Your Honor. I do think that the word sloped etching profile is part of the analysis as well. We have two or more trenches in the claim and each trench has a sloped etching profile with these two negative limitations. So by saying, oh, we only need to look at part of the trench, then these negative limitations don't mean anything. Well, how did the district court understand trench? Was it kind of when you're up in the sky and you look down at a cornfield, you're thinking those are trenches? More or less, essentially, it's got sides, a bottom, and it's over the top. Right, but I think you probably know this. When it comes to semiconductor processing and you're etching and depositing layers, trenches can be something other than a row in a cornfield. It can be like when you're putting rows of dollops of cookie dough on a cookie sheet when you're baking and then all that space on the cookie sheet between the dollops of cookie dough. Those are like trenches too. You're etching away space between different areas. There's different terminology, Your Honor. I do think that trench does imply that we're having some dimension and that when we're doing etching, we're going through the different layers during the etching process. It's not just a hole, a trench. I don't think anyone would still refer to that as a trench. So I think the district court certainly got it right when the district court said it's got to have a bottom, sides, and it's got to have an opening. Well, that's my concern. My concern is maybe the district court judge went to Webster's Caliche Dictionary and maybe would have been better served by having expert testimony or something else to sort of inform the understanding of what's an etched trench in the context of semiconductor processing. Your Honor, I suppose because you have a battle of the experts, would that have assisted the district court below? I don't think so. I think the intrinsic record here is the threat of a trench is pretty plain. We did put in dictionary sites to aid the district court, which the district court relied on, and I think the trench has a common plain usage that was adopted by the district court, and that's correct in this case. I mean, frankly, their definition of trench, Your Honor, is just a void, any void in material in the trench, and I think that takes out of the context of this invention. I know you're over your time, but I just want to ask you one more question going back to selected from the group comprising. What if the district court judge was right that it means it's open? So rendering all those itemized groups superfluous because it could be any of those or it could be anything else, right? And that was really the basis why the judge found the claim to be indefinite. That's correct. But what if one of ordinary skill in the art knew that there was a very well-established existing set of materials that can serve as a substrate for something like a light-emitting device, a semiconductor light-emitting device when you're dealing with these sorts of lattice defects? I don't know, but it's possible that could be the case. It doesn't seem like this is the part of the claim that's the heart of the invention, if I may use that phrase. But what I'm saying is maybe there needed to be a little more record development on the very question that I'm asking. Maybe one of ordinary skill in the art would kind of know what kind of semiconductor materials to use as your base substrate when you're making a light-emitting device. I think it's a dangerous road to go down if you start requiring us to get experts in here and start telling in contradiction to the intrinsic record that people would know that quartz silicon dioxide, which is a well-known substrate in the semiconductor business. And so is silicon nitride. Those two substances aren't in the list. To start having a battle of the experts how one expert says, oh, people know quartz, you don't use that with this. And another expert says, yeah, you do. Thank you, Mr... It's a dangerous road. Thank you, Your Honor. Thank you for being able to ask the question. Mr. Katz, we'll give you five minutes for rebuttal. Thank you, Your Honor. First things first, again, I want to apologize regarding the notice of the court on the re-exam. I did not believe it was relevant. And my reason for that is I see this timeline of the 851 patent going along and then the re-exam certificate issuing. And then the 851 goes away and we've got a new patent. It would be very ironic if the re-exam certificate issued today. But in any case, we still seek the past damages for the past infringement no matter what happens going forward. And to get there, this court needs to decide... You're saying it's not moot. I'm sorry? You're saying it's not moot. It's not moot. No, it is not. I'd also like to point out, going back to the comprising language and remind the court that this court held in Spectrum International the sterolite, again, it goes back to the comprising is not a weasel word with which to abrogate claims limitations. It also came up in Moleculon. We also got into a little bit regarding the notice function here. And we talked about this a little bit in our brief. In Nautilus, the Supreme Court was looking at a situation where patentees were potentially inserting vague terms into their patents to get them through the patent office and then trying to assert them much more broadly. We don't have that situation here. Lexington has always argued for the narrow construction of the claim, just limiting it such that substrate material has to contain one of those list items. It's been Amazon who's been claiming that it could contain any material under the sun. Well, I think you have two choices to understand what the claim is. It's either closed, so the substrate is one of those itemized, one of those six or seven items. Or it's open, where it could be any one of those items or really anything else. I don't see any other reading of the claim. Obviously, the Spectrum International case and the fact that the prosecution of history says that it cannot be the same as the first layer tells you that option two is not correct. I might point out that option one needs to be modified so that it can include one or more of the list items. Right, but it says selected from the group comprising. That kind of language suggests you select one of those, not one or a combination of the listed items. If you substitute in including but not limited to, including means that you don't just have to include one. You can include more than one. That's not the language of the claim. I understand, but also the skilled artisan is going to look at the specification and he's going to see the combinations used as exemplary substrate materials and he's going to know that it can be more than one. But there are times where people use claim language that doesn't capture every single possible notion that's expressed in the written description. In any case, I want to point out that the notice function should be satisfied here by Lexington adopting the more narrow construction. This court has held in athletic alternatives that by choosing the narrower of the two possible constructions, the notice function is satisfied. What about figures 2B and 4B? McKeon says that the amendment eliminated them from the claim irrespective of the fact that they were in the spec. I believe the court asked with regard to the issue of sharp corners and everything. If you look at the hierarchy and we discussed this on page 26 of our reply, the etched trenches says having a sloped etching profile, meaning it could include other things. The word smooth rotation of microfacets and the prescribed angle of inclination, that modifies the sloped etching profile. The sloped etching profile does not include the flat portions. It doesn't include the corners. It only includes the sloped portions. The smooth rotation of microfacets, the prescribed angle of inclination again, it only modifies the sloped etching profile. The fact that the claim says etched trenches having the sloped etching profiles clearly means that it can have other things, like it can have a flat space in between. That's clearly described by the embodiments, for instance, figure 2B. I might also point out, I think the court may have pointed out, with regard to the sharp corners, presumably if Amazon's argument is correct, it does away with other embodiments as well. The main point is that the district court incorrectly construed having as consisting of. That was the mistake. If you look at the specification and it clearly shows the various embodiments and it has text in there that says that these things can be spaced with flat areas in between. Thank you, Mr. Katz. You may have noticed the red light is on. We'll take the case under review.